IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MOUNT ZION BAPTIST CHURCH OF MARIETTA, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 1:10-CV-609-RWS |
| GUIDEONE ELITE INSURANCE COMPANY. | : : : : | |
| Defendant. | : | |

**ORDER**

This case comes before the Court on Defendant GuideOne Elite Insurance Company's ("GuideOne") Motion for Summary Judgment [22]. After a review of the record, the Court issues the following Order.

**Background**

GuideOne issued an insurance policy to Plaintiff, Mount Zion Baptist Church of Marietta in 2008. (Def.'s SMF, Dkt. [22-2], at ¶ 1). Plaintiff now seeks to recover under this policy for damages to its Church Sanctuary, which occurred on March 9, 2009. (Pl.'s Br., Dkt. [27-1], at p. 1). Under the policy, GuideOne agreed to pay "for any direct physical loss or damage to Covered

Property, caused by collapse of a building or any part of a building that is insured." (Def.'s SMF, Dkt [22-2], at ¶ 29). Collapse is defined as "the actual abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended use." (Id. at ¶ 31).[1] The policy further states that GuideOne will only compensate for damage if the collapse is caused by "decay that is hidden from view, unless the presence of such decay is known to the insured prior to the collapse." (Id. at ¶ 30).

On or about March 9, 2009, the structural components of the church building "failed." (Pl.'s SMF, Dkt. [27-1], at ¶ 3). On June 11, 2009, William B. Casey, Mt. Zion's Chairman of the Board of Trustees, submitted to GuideOne a Sworn Statement in Proof of Loss. (Aff. of Casey, Dkt. [22-4], at p. 67). In that statement Mount Zion swore that (1) a collapse had occurred on March 9, 2009 in a structure on the church grounds, and (2) the cause and origin of the loss were "decay and deterioration due to defective materials and method of construction." (Aff. of Casey, Dkt. [22-4], at pp. 68-69).

---

[1] Plaintiff asserts that there is no definition of collapse in the policy. However, the policy cited by Plaintiff includes the aformentioned definition of collapse. (Pl.'s SMF, Dkt. [27-1], at pp. 10-11).

2

Enclosed with the Sworn Statement was a report dated March 31, 2009 from John M. Ware, a structural engineer who was hired by Mount Zion to inspect the building. (Def.'s SMF, Dkt [22-2], at ¶ 4). During his inspection, Mr. Ware observed that the building had "outwardly bowed sidewalls and a sagging roof." (Aff. of Ware, Dkt. [22-7], at p. 32). He noted that the sagging and bowing had likely been occurring for 15 years. (Id. at p. 69). Mr. Ware testified that one could readily see in the attic that the roof truss system was poorly designed and constructed, such that it was "obvious that [the truss system] is inadequate to support the long-term loads required by the building codes." (Id. at pp. 29, 34-35). Mr. Ware also observed that some of the roof truss members had been repaired over time by having "sister members added."[2] (Id. at p. 38). Mr. Ware did not observe any decay, vermin damage, or insect damage during his inspection of the attic. (Id. at p. 41). Although Mr. Ware noted that several of the roof rafters had collapsed and severed, he stated that the walls and roof of the sanctuary were standing at the time of the inspection.

---

[2] A sister member is "where you straddle an additional member on one or both sides of an existing one that's suffered some distress, cracked, bent, whatever." (Aff. of Ware, Dkt. [22-7], at pp. 34-35).

3

(Id. at pp. 40, 75-78). Mr. Ware observed that to leave the sanctuary standing "constitutes a hazard to people." (Id. at p. 54).

As a result of the report, Mr. Casey agreed to install bracing inside the sanctuary. (Def.'s SMF, Dkt [22-2], at ¶ 18). Between the time of Mr. Ware's report on February 28, 2009 and the installation of the bracing, the building continued to stand. (Id. at ¶ 19). The building continued to stand until Plaintiff had it demolished. (Id. at ¶ 21).

Mt. Zion reported the situation to GuideOne on April 6, 2010. (Id. at ¶ 22). Although the contractor reported the sagging and bowing to Mr. Casey on February 16, 2009 and the bracing was installed on February 28, 2009, Mount Zion asserted that the time and origin of the loss was March 9, 2009. (Id. at ¶ 23). As part of its investigation, GuideOne also hired an engineer to inspect the building. (Id. at ¶ 24). Mr. Grimshaw, GuideOne's engineer, inspected the property on April 23, 2009 and provided Mount Zion with a copy of his report. (Id. at ¶¶ 24, 25, 26). Mr. Casey agreed that Mr. Grimshaw's observations were consistent with those in Mr. Ware's report. (Id. at ¶ 27).

4

# Discussion

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

AO 72A
(Rev.8/82)

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving

AO 72A
(Rev.8/82)

party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II. The Damage to Plaintiff's Building Does not Fall Within the Additional Coverage for Collapse Provision of the Policy.

Plaintiff has the burden to prove that the damage to its sanctuary is covered by the Additional Coverage for Collapse provision of its insurance policy with GuideOne. Chix v. Ga. Farm Bureau Ins. Co., 258 S.E.2d 208 (Ga. App. 1979); Cuma Mut. Ins. Soc'y v. Turner, 225 S.E.2d 765 (Ga. App. 1976). Plaintiff's argument rests on the proposition that "collapse" is not defined by the policy. (Pl.'s Br., Dkt. [27-1], at pp. 16-21). According to Plaintiff, the word "collapse" has multiple definitions including "cave-in," "fall-in," "hold-up," and "deflation." (Id.). As a result of these multiple meanings, Plaintiff asserts that this Court should construe the policy in favor of the insured and find that the damage to the sanctuary is covered by the policy. (Id.).

While Plaintiff is correct that an ambiguous insurance contract should be construed in favor of the insured, this Court will not strain to find ambiguity in a contract and must enforce an unambiguous contract as written. See State Farm Mut. Auto Ins. Co v. Stanton, 685 S.E.2d 263, 265 (Ga. 2009) (rule of liberal

7

construction of an insurance policy cannot be used to create ambiguity where none exists). Despite Plaintiff's argument to the contrary, the word "collapse" is defined in GuideOne's policy. Regardless of the many meanings attributed to the word "collapse," this Court must honor the specific definition of the policy when determining whether this loss is covered. See Fireman's Fund Ins. Co. v. Mosaic Tile Co., 115 S.E.2d 263, 265 (Ga. App. 1960) (stating "a contract of insurance clearly defining the meaning of [a] word . . . which leaves no ambiguity or deceptive verbiage, is not open to construction, and the literal meaning must be attributed to it"). The policy at issue provides that with respect to buildings, "collapse means the actual abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended use." (Def.'s Br., Dkt [22-1], at p. 8). Moreover, "a building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shirking, or expansion." (Id. at pp. 8-9).

      Plaintiff is unable to prove that the sanctuary "collapsed" within the meaning of the policy. Plaintiff points to the testimony of two witnesses who

8

described the building as "collapsed" or "really caving in." (Pl.'s Br., Dkt. [27-1], at p. 19). However, despite this testimony, the building was standing at the time of the event. Mr. Ware admitted that the building and its components were still standing at the time of his inspection. Moreover, Mr. Casey testified that although he was concerned that the wall was about to fall, it did not come down until the Church's contractor demolished the building. (Aff. of Casey, Dkt. [22-4], at pp. 37-38, 43). As a result, the building had not collapsed because "a building that is standing or any part of a building that is standing is not considered to be in a state of collapse" according to the terms of the policy.

      Plaintiff's argument is premised on the fact that "collapse" is not defined by the policy and therefore a jury question exists as to whether the "caving in" of the sanctuary amounts to collapse. However, Defendant asserts that even if the damage constituted "collapse" as defined by the policy, Plaintiff would still be unable to recover because the collapse was not caused by one of the enumerated reasons set forth in the insurance policy for which Plaintiff could recover. (Def.'s Br., Dkt. [22-1], at pp. 11-13). Section D provides that GuideOne will pay for the loss "if the collapse is caused by one or more of the following . . . decay hidden from view." Although Plaintiff did not respond to

this argument, the Court finds no evidence in the record that the damage to the sanctuary was caused by decay. Mr. Ware testified that his inspection of the attic revealed no evidence of decay and Plaintiff admitted this fact. (Aff. of Ware, Dkt. [22-7], at p. 41; Pl.'s SMF, Dkt. [27-3], at ¶ 2). Plaintiff does not argue that any of the other covered causes of collapse are applicable. Therefore, GuideOne is not required to cover the damage to Plaintiff's building because the damage did not result from one of the causes listed in the policy. As a result, Defendant is entitled to summary judgment on Plaintiff's claim that it failed to cover the loss.

### III.   Plaintiff Cannot Recover under O.C.G.A. § 33-4-6.

Plaintiff further asserts that it is entitled to recover bad faith penalties and attorney's fees pursuant to O.C.G.A. § 33-4-6 because Defendant acted in bad faith in failing to cover the loss. (Pl.'s Br., Dkt. [27-1], at p. 21). This statute provides that "in the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same . . . and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, . . . all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33-4-6. This statute only applies in

cases where an insurer fails to compensate for a "covered loss." Because this Court concludes that the damage to the sanctuary is not covered by the policy, O.C.G.A. § 33-4-6 has no application in this case.  Therefore, GuideOne is entitled to summary judgment on Plaintiff's bad faith claim.

## Conclusion

The Court concludes that there is no question of fact regarding whether Plaintiff's loss is covered by the Policy. Because the damage does not fall within the definition of collapse, Defendant's Motion for Summary Judgment [22] is **GRANTED.**

**SO ORDERED** this  18th   day of April, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

11